## GOODRICH and WIFE *against* LAMBERT.

*A* devised lands to his grand-son *B*, "to have and to hold the use and improvement thereof, with the privileges and appurtenances thereunto belonging, to him, during his natural life, and at his death, to descend to the eldest male heir of his body, and on failure thereof, to his heirs general." *A* died in 1792.   *B* afterwards had issue *C*, a son, and four daughters.   In *April*, 1824, *B* and *C*, by a deed of warranty, conveyed the premises to *D*. In *November*, 1824, *C* died.   After the death of *B*, in 1833, his sisters brought ejectment against *D*.   Held, 1. that *C* took nothing under the devise, he having never been "the eldest male heir of *B*;" and, of course, nothing passed, by virtue of the conveyance from him to *D*; 2. that the particular intent of the devisor, that *B* should take only a life estate, was controuled, by the general intent, that the heirs of *B* should take as descendants, and not as purchasers; the former being inconsistent with the latter; 3. that this devise was embraced by the rule in *Shelley's* case; 4. that that rule was a settled rule of construction and of property, in this state, as well as in *Great-Britain*, until the revision of our statutes in 1821, when it was abrogated, by legislative enactment; 5. that *B*, consequently, took an estate in fee-simple under the devise, and his deed to *D* conveyed a valid title.

THIS was an action of ejectment.

On the 8th of *June*, 1789, *David Boland*, of *Sharon*, in this state, made his last will and testament, legally executed to pass the title to real estate, containing, among other provisions, a clause in the following words: "*Item.*   I give and bequeath unto *John Boland*, son of my son *David Boland*, the one half of the eleventh lot of land in *Sharon*, and being the *South* half, and bounded as follows: *North* on *Thomas Crippin's* land; *West* on *New-York* state; *South* on the tenth home-lot; and *East* on highway.   Also, about 25 acres lying in *Sharon*, on the *East* side of the highway which leads to *Dover*, and is bounded *North* and *West* on highways, *East* and *South* on *William Chapman's* land.   Also, the one half of a certain wood lot or piece of land, lying in *Sharon*, and *Eastwardly* of

*David Strong's* late dwelling-house, containing about 100 acres : *To have and to hold* the use and improvement of the aforesaid bequeathed premises, with the privileges and appurtenances thereunto belonging, to him, during his natural life, and at his death, to descend to the eldest male heir of his body, and on failure thereof, to his heirs general." *David Boland*, the testator, died at *Sharon*, on the 5th of *August*, 1792. *John Boland*, the devisee, was born on the 29th of *June*, 1775 ; and after the decease of the testator, intermarried with *Lydia Leavitt*, by whom he had lawful issue, as follows, *viz.* one son, *Myron J. Boland*, born on the 13th of *July*, 1801, and four daughters, *viz. Marena*, *Leulah, Hannah*, and *Evelina*, now *Evelina Goodrich*, the wife of *Solomon Goodrich*, they being plaintiffs in this suit. *Myron J. Boland* died on the 4th of *November*, 1824 ; but all the daughters of *John Boland* still survive. *John Boland* died on the 25th of *April*, 1833.

The demanded premises are a part of the real estate devised to *John Boland* in the above recited clause of the will of *David Boland*. Immediately after the decease of *Agnes Boland*, wife of *David Boland*, *viz.* on the 1st of *July*, 1793, *John Boland* entered into the possession of the demanded premises, under said will, having no other title thereto, and continued to use and occupy the same, until the 7th of *February*, 1824. On that day, *John Boland*, and *Myron J. Boland*, by a deed of warranty, conveyed the demanded premises to the defendant, who thereupon entered into possession, and has ever since continued in possession of the same, claiming title thereto, by virtue of said deed, and taking the whole rents and profits thereof to himself.

These facts being agreed to, the case was reserved for the advice of this court as to what judgment should be rendered thereon.

*W. W. Ellsworth* and *Sedgwick*, for the plaintiffs, remarked, That the phrase " eldest male heir of his body," as used in this will, means the eldest son of *John Boland* living at his death ; (*Allyn* v. *Mather*, 9 *Conn. Rep.* 114.) and that the plaintiffs, in the right of *Evelina Goodrich* and her sisters, being the immediate descendants of a person then in being, and capable of taking as purchasers under the will, are entitled to recover, unless precluded, by the deed to the defendant of the

*Litchfield,*
June, 1835.

Goodrich
*v.*
Lambert.

7th of *February*, 1824.   In support of the right of the grantors of that deed to make the conveyance, the rule in *Shelley's* case is relied on.   They then contended,

1. That the rule in *Shelley's* case was not, when the will took effect, a part of the law of this state.

In the first place, that rule is founded on reasons which have long since ceased to operate; and *cessante ratione, cessat ipsa lex.* 2 *Bla. Com.* 67—70.   3 *Co. Litt.* 376 *b.   Butler's* note.   4 *Cruise's Dig. tit.* 32. *c.* 25.

Secondly, the rule has been condemned, by eminent jurists in *England.·  Papillon* v. *Voice,* 2 *P. Wms.* 471. per Sir *Joseph Jekyl,* M. R.   *King* v. *Melling,* 1 *Vent.* 225. per *Rainsford* and *Twisden,* Js.   *Legate* v. *Sewell,* 1 *P. Wms.* 87. per *Tracey,* J.   *Doe* d. *Long* v. *Laming,* 2 *Burr.* 1106. 1111. 1112. per Lord *Mansfield,* Ch. J. and *Denison* and *Wilmot,* Js.   *Goodtitle* d. *Sweet* v. *Herring* & al. 1 *East* 271. per Lord *Kenyon,* Ch. J.

Thirdly, it has not been regarded with more favour in this country.   In *Pennsylvania,* it has been rejected upon great deliberation.   *Findlay's* lessee v. *Riddle,* 3 *Binn.* 139.   In the state of *New-York,* it was adopted, by the judges, in the case of *Brandt* v. *Gelston,* 2 *Johns. Ca.* 139.; but has been since abolished, by statute.   1 *N. Y. Rev. Stat.* 725.   In *Connecticut,* it was supposed to have been adopted, in the case of *Bishop* v. *Selleck,* 1 *Day,* 299.; but notwithstanding that case, the weight of authority in this state is against it.   *Reeve's Dom. Rel.* 482. 1 *Sw. Dig.* 81.   *Throop* v. *Williams,* 5 *Conn. Rep.* 98.   And to put all doubts at rest, the legislature, at the revision of the statutes in 1821, declared the law in opposition to the rule.   *Stat.* 301.

2. That admitting the existence of the rule, this case does not come within it.   For, in the first place, *John Boland* was *tenant in tail* of the demanded premises; from which it follows, secondly, that as by our laws, a tenancy in tail cannot be converted into a fee-simple, the rule cannot apply, we having never adopted the *English* system of fines and recoveries.   1 *Sw. Dig.* 82.

3. That the rule in *Shelley's* case is not applicable where the words of the devise indicate, that the person denoted by the word "heir" is to be a new stock or root of inheritance; for it is then taken as a word of *purchase.*   4 *Cruise's Dig. tit.* 32.

*c.* 25. *s.* 51, 2. *Archer's* case, 1 *Rep.* 66. *Clark* v. *Diggs, Moore,* 593. In this case, the words " eldest male heir of his body" denote a new stock or root of inheritance.

4. That if the case is not controuled, by the rule in *Shelley's* case, so that the *intent* of the devisor may have effect, *John Boland* took only a life estate. He is to have *the use and improvement* during *his natural life ;* and at his death, the estate is to descend.

*A. Sterling* and *Hungerford,* for the defendant, contended,

1. That by the rule in *Shelley's* case, *John Boland,* under the will, took an estate in fee. *Shelley's* case, 1 *Rep.* 88. *Lewis Bowles's* case, 11 *Rep.* 80. *Fearne on Cont. Rem.* 158. 4 *Cruise's Dig. tit.* 32. *c.* 25. *Bishop* v. *Selleck,* 1 *Day,* 299. 1 *Sw. Dig.* 80.

2. That if *John Boland* did not take a fee executed, absolutely or *sub modo,* in himself, he nevertheless took a vested remainder under the rule in *Shelley's* case.

3. That by the provisions of the will, the remainder was intended to be a remainder in fee in *John Boland* and his heirs, and that his heirs should take in that character and quality.

4. That allowing *John Boland* takes an estate tail only under the will, in the first instance ; the remainder limited upon it is a vested remainder. 4 *Kent's Com.* 195. *Ives* v. *Legge,* 3 *Term Rep.* 488. *in notis. Badger* v. *Lloyd,* 1 *Ld. Raym.* 523.

5. That if *John Boland* took an estate in fee, executed in himself, either absolutely or *sub modo,* it is a vested remainder, and his conveyance was good.

6. That supposing the remainder limited in fee is a contingent remainder, it was intended his heirs should take in character of heirs, and they are estopped by the deed. *Stow* & al. v. *Wyse,* 7 *Conn. Rep.* 214. *Doe* d. *Christmas* v. *Oliver,* 10 *Barn. & Cres.* 181. (21 *Serg. & Lowb.* 50. 52.)

BISSELL, J. In this case, both parties claim under the will of *David Boland ;* and it is admitted that the plaintiffs are entitled to recover, unless the premises were well conveyed, by the deed from *John Boland* and *Myron J. Boland,* dated the 7th day of *February,* 1824.

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1835.*

Goodrich
*v.*
Lambert.

The clause in the will, upon which the case turns, is in these words: "I give and bequeath unto *John Boland,* son of my son *David Boland,* [describing the demanded premises,] to have and to hold *the use and improvement* of said bequeathed premises, with the privileges and appurtenances thereunto belonging, to him, *during his natural life,* and *at his death* to descend to the eldest male heir of his body, and on failure thereof, to his heirs general."

We are all of opinion, that nothing passed in virtue of the conveyance from *Myron J. Boland.* Upon the facts stated and agreed in this case, he was never the eldest male heir of *John Boland,* and of course, took nothing under the devise. *Allen* v. *Mather,* 9 *Conn. Rep.* 117.

The only question, then, is, what estate did *John Boland* take under the will? It is admitted, that if he took an estate in fee simple, the premises are well conveyed, and the defendant has a valid title. But it is claimed, that he took only a life estate ; and such, it is said, was the manifest intention of the testator. Were we permitted to examine this will, with reference to that question only, and to decide upon it, uncontrouled by any settled rule of construction, we should probably come to the same conclusion. For the words are certainly very strong to show the intention of the testator, that *John Boland* should take only an estate during his own life. But the enquiry, "*what estate did the testator intend John Boland should take,*" is not the only question involved in the case. What estate did he intend the *heirs* of *John Boland* should take? And of what nature? Did he intend they should take as descendants, or as purchasers? Or had he no settled intention on the subject? If he intended they should take as heirs, his intention to give a mere life estate to the ancestor, is inconsistent with the general intent ; and the rule applies, *viz.* "That where the testator shows a particular, and also a general intent, which are inconsistent with each other, the general intent will be established, and the particular one disregarded." 6 *Cruise's Dig.* 380. 413. *Robinson* v. *Robinson,* 1 *Burr.* 38. *S. C.* 2 *Ves.* 225. *Doe* d. *Blanford* & al. v. *Applin,* 4 *Term Rep.* 82.

Sir *William Blackstone,* in his celebrated argument in the case of *Perrin* v. *Blake,* says : "The true question of intent will turn, not upon the quantity of estate intended to be

given to the ancestor, but upon the nature of the estate intended to be given to the heirs of his body. That the ancestor was intended to take an estate for life, is certain ; that his heirs were intended to take after him, is equally certain ; but *how* those heirs were intended to take, whether as descendants, or as purchasers, is the question. If the testator intended they should take as purchasers, then the ancestor only remained tenant for life ; if he meant they should take by descent, or had formed no intention about the matter, then, by consequence and operation of law, the inheritance first vested in the ancestor." *Harg. Law Tracts*, 504.

And again he remarks : " It is not incumbent on the plaintiff to show, by any express evidence, that his testator meant to adhere to the rule of law ; for that is always supposed, till the contrary is clearly proved : but it is incumbent on the defendant to show, by plain and manifest indications, that the testator intended to deviate from the general rule ; for that is never supposed till made out, not by conjecture, but by strong and conclusive evidence." *Ibid.*

What, then, it may be enquired, is the general rule, as applicable to the case now before us ? The case falls directly within an ancient and well settled principle of the common law, usually known as " the rule in *Shelley's* case." And to shew this, it can only be necessary to advert to the rule. The rule is, that when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance, an estate is limited, either mediately or immediately, to his heirs in fee or in tail ; that always, in such cases, the word *heirs* is a word of limitation of the estate, and not of purchase : of course, the remainder is immediately vested in possession of the ancestor so taking the freehold, and is not contingent.

Now, it would be superfluous to adduce authorities to prove, that the case before us falls within the rule. That point is incontrovertible. Equally unnecessary would it be to attempt to prove, that the rule in *Shelley's* case has become, not only a settled rule of construction, but a rule of property, in *Great-Britain*. For whatever may be said regarding the feudal origin of the rule ; however the reasons upon which it was founded may have ceased ; and whatever may have been the anxiety of courts to redeem cases from its dominion, still its existence is not questioned ; and still it controuls all cases falling clearly within

*Litchfield,*
June, 1835.

Goodrich
*v.*
Lambert.

HARWARD LAW LIBRARY

*Litchfield,*
*June, 1835.*
———————
Goodrich
*v.*
Lambert.

its provisions. Has this rule, thus established in *Westminster-Hall*, been recognised and adopted in this state ? This is the only remaining enquiry.

Were this here a new question, and were we at liberty to consider it, independently of every decision, by our own courts, we might, indeed, well hesitate before we determined to depart from a well settled principle of the common law. It is always, perhaps, safer, in cases involving a title to real estate, to adhere to the settled course of decisions, than to depart from them, from a regard to the hardships of a particular case. But we are relieved from any embarrassment of this sort; for we are unable to resist the conclusion, that this is no longer an open question in the state of *Connecticut.*

In the case of *Bishop* v. *Selleck,* 1 *Day,* 299. the devise was of an estate in fee to the heirs of *Sarah Selleck ;* the use only of which was given to her, during her natural life. She conveyed the devised premises, by deed ; and from her the defendant derived his title, by a regular chain of conveyances. The question was, what estate she took under the will : and it will be at once seen, that the question involved the application of the rule in *Shelley's* case. The case was argued upon this ground. And although the reasons of the court are not given, it must, obviously, have been determined, that *Sarah Selleck* took an estate in fee simple, under the devise. The same point had been previously decided, by the superior court, then consisting of five judges. The question was, therefore, settled upon great deliberation ; and it is impossible to distinguish that case from the present. We are constrained to yield to that decision ; and do not feel at liberty to speculate upon the policy of the rule. We sit here to pronounce the law as we find it. If it requires to be corrected, that must be done elsewhere. And that has been done, in this case. By the act of 1821, the legislature *abrogated* the rule in *Shelley's* case ; thus clearly recognising its previous existence in this state. Are we are at liberty, in the face of this decision of the Supreme Court, and of this solemn act of the legislature, now to say, that the rule never had an existence here ? We think not. We fully assent to the argument pressed upon us, that in the construction of a last will, the intent of the testator is to govern. But this is a construction depending on, and guided by, certain fixed and known rules. And it is of the last importance to

the certainty of titles, and the stability of property, that these rules should be uniform, and strictly adhered to.

Upon the whole, we are of opinion, that the rule in *Shelley's* case must controul this devise, and that the plaintiffs are not entitled to recover. Let this advice be given to the superior court.

In this opinion the other Judges concurred, except HUN- TINGTON, J. who gave no opinion, having been of counsel in the cause.

Judgment for defendant.